FRY et al., Appellants,

v.

WALLTERS & PECK AGENCY, INC. et al., Appellees.

[Cite as *Fry v. Walters & Peck Agency, Inc.* (2001), 141 Ohio App.3d 303.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–00–005.

Decided Feb. 9, 2001.

304

*Dawn M. Wenk,* for appellants.

*Cormac B. DeLaney,* for appellee Walters & Peck Agency, Inc.

*James L. Schuller,* for appellee Grange Mutual Casualty Company.

———————

KNEPPER, Judge.

This is an appeal from a judgment of the Williams County Court of Common Pleas that granted summary judgment in favor of appellees and dismissed appellants' complaint. For the reasons that follow, this court affirms the judgment of the trial court.

Appellants set forth the following assignments of error:

## "Assignment of Error No. 1

"Neil Fry, Larry Fry and Fry Farms are proper parties to bring a cause of action against appellees Grange Mutual Casualty Company and Walters & Peck Agency, Inc. and the trial court erred by dismissing them from the lawsuit.

"Assignment of Error No. 2

"Appellee Walters & Peck Agency, Inc. admittedly breached its duty as an agent to the Frys and the trial court erred by granting summary judgment on the issue of negligence.

"Assignment of Error No. 3

"Appellees each acted in bad faith during its relationship with the Frys and the trial court erred by granting summary judgment in favor of appellees on this issue.

"Assignment of Error No. 4

"The trial court erred when it failed to address the merits of the breach of contract claim, instead merely depending on the effects of the coinsurance clause as support for granting summary judgment in favor of appellee Grange Mutual Casualty Company."

The facts that are relevant to the issues raised on appeal are as follows. Fry Farms is a partnership owned and operated by Modestus Fry and his two sons, Neil and Larry. When a fire on January 9, 1998, destroyed one of the farm buildings and some of its contents, appellants ("Frys") reported the loss to their insurance agency, appellee Walters & Peck Agency, Inc. ("Walters"), and to appellee Grange Mutual Casualty Company ("Grange"), their insurance carrier. The adjuster estimated appellants' loss at $85,690.32 and, based on Granges's application of an eighty-percent coinsurance clause in the policy, Grange offered $27,215.25 as a full and final settlement. Appellants contested the application of the coinsurance clause and refused to accept the money under those conditions. Grange withdrew the offer and on January 11, 1999, appellants filed a complaint in which they asserted, (1) as to Walters, that the agency negligently failed to obtain the insurance coverage appellants requested, failed to exercise reasonable care in advising them, and breached its duty to process the claim in good faith and (2) as to Grange, that the company breached its contractual obligation to fully compensate appellants for the loss as stated in the insurance policy and acted in bad faith by failing to process the claim for more than two years after the loss.

On January 27, 2000, appellants accepted payment of $27,215.25 on the claim. On February 22, 2000, both appellees filed motions for summary judgment. In support of its motion, Walters asserted that because Modestus Fry is the only individual listed as a named insured on the policy, Neil Fry, Larry Fry and Fry Farms could not maintain their cause of action in this case; Modestus had held policies with the same coinsurance provision since at least 1988, and had never before complained of not understanding the issue of coinsurance, and was charged with notice of the contents of his own policy; and there was no evidence

that Modestus had ever inquired about the coinsurance or indicated that he was confused by the clause, and therefore there was no evidence of bad faith on Walters's part. In support of its motion for summary judgment, Grange asserted that the coinsurance clause has been in the Frys' policy since at least 1982 and they had a duty to read their policy; while arguably "somewhat complex," the clause is clear and unambiguous; and the company paid its share of the loss and has no further liability to the Frys.

The trial court had before it several depositions. Appellants submitted the deposition of Jeffrey Travis, a claims adjuster for Grange, who testified that he prepared a statement of loss after the fire. Travis testified that, according to his calculations, Grange owed appellants approximately $27,000 for their loss. He stated that he sent appellants a sworn statement in proof of loss and told them that after they signed the statement he would issue a check for $27,139 as full and final settlement of the loss. Appellants, however, refused to sign the statement and Travis did not issue the check. Travis testified that appellants believed that they were entitled to a payment of $85,000 pursuant to their limit of coverage and that appellants told him that they were unaware of the coinsurance clause in their policy and disagreed with its application to their claim.

Appellants also submitted the deposition testimony of Harold Houdeshell, an agent and part owner of Walters & Peck Agency, Inc. Houdeshell testified that he had worked with the Frys' file since 1993 or 1994, and that the only person he discussed the farm policy with was Modestus. Houdeshell recalled meeting with Neil about a policy for the family's snow removal business but did not recall talking with Neil or Larry about the farm policy until after the fire loss. He stated that it was "possible but unlikely" that he ever spoke to Neil about the farm policy. Houdeshell stated that he had asked Modestus many times to sit down and review his policies because he knew that Modestus was buying a lot of equipment for the farm, but Modestus was always in a hurry and never had time to do that. He further stated that he did not at any time tell any of the Frys that they were underinsured. Houdeshell testified that coinsurance clauses are a standard feature in farm policies, although the coinsurance amount can range from seventy to ninety percent. He stated that as early as 1982, which is as far back as the agency's records go, coinsurance was a part of every property policy.

Appellees presented the deposition of Modestus Fry, the named insured on the policy in question. Modestus testified that he had been a client of Walters for about forty-seven years. Modestus further testified that he has a learning disability and "can read and write a little." He stated that he was always treated well by the people at Walters with the exception of one time about three years before the fire when he felt they did not follow up on his concerns about adequate coverage. Modestus stated that it was his belief that his policy provided

coverage of $85,000 for miscellaneous farm equipment and that he was not aware of the eighty-percent coinsurance clause before the fire. Modestus first said that before the fire Neil and Larry did not help him review notices he would receive from the agency or from Grange but then said that his sons did review that type of thing before the fire. Modestus recalled receiving a notice in 1994 as to a new provision in his policy, which his wife, and he did not understand but said that they did not follow up with the agency because they felt that if it was important someone would have told them about it. Modestus was shown the declarations page from his policy with Ohio State Grange Mutual Insurance company (appellee Grange Mutual's predecessor) dated August 30, 1988, which listed "80% coinsurance" on farm machinery, tools and supplies. Modestus did not recall whether or not he ever received the document. The defense entered as exhibits two additional policy declarations pages, one for the policy term September 23, 1988 through July 10, 1989, and another for the policy term July 10, 1990 through July 10, 1991. Both policies indicated eighty-percent coinsurance on the farm machinery, tools, and supplies. Again, Modestus did not recall receiving the documents but also did not deny receiving them.

Larry Fry testified at deposition that he thought he had been to the Walters office once to pick up a road atlas and once just accompanying his father. Larry stated that he first became aware of the coinsurance after the fire when Houdeshell told them they needed to reevaluate their personal property coverage. Prior to that, he had not spoken with anyone about coinsurance, had never heard the term, and had not reviewed any of the insurance policies covering the farm or any of the premium notices. Larry further stated that he did not think he was a named insured on the farm policy.

Neil Fry testified at deposition that he had occasional contact with Walters before the fire at times when they purchased new equipment that they wanted to add to their coverage. Neil stated that his father handled the farm insurance and that he was not aware of the coinsurance clause on the farm policy until after the fire. Neil further stated that after talking to Houdeshell and Travis following the fire, he got the impression that the coinsurance provision in their policy had been in effect for several years. Neil testified that he was not a named insured on the farm insurance policy.

Appellants offered the affidavits of Modestus, Larry and Neil Fry, which contained essentially the same information as that provided at deposition. Appellees offered the affidavit of Michael Shonebarger, Farm Underwriting Manager for Grange. Shonebarger stated that farm policy form FO–300(B), the "Schedule of Farm Personal Property" that contains the coinsurance clause, has been required in all Grange policies containing farm owners personal property coverage since 1967.

Appellants filed memoranda in opposition to appellees' motions and on April 6, 2000, the trial court filed its judgment entry in which it granted summary judgment in favor of Grange and Walters and dismissed the Frys' complaint. In its decision, the trial court found that the contract insured only Modestus Fry and accordingly dismissed Neil Fry, Larry Fry, and Fry Farms as parties. As to the coinsurance clause, the trial court found that it was a properly enforceable part of the policy and had been a part of this policy since at least 1982. The trial court further found that the insureds are conclusively presumed to know the terms of their policy and that there was no genuine issue of material fact as to the claim of bad faith against Grange. Finally, the trial court found that there was no evidence presented that Modestus Fry had inquired about the coinsurance clause or that Walters had done anything of a misleading nature in regard to the meaning of the clause and that, therefore, Walters had not acted negligently. It is from that judgment that appellants appeal.

In their first assignment of error, appellants assert that the trial court erred by dismissing Neil and Larry Fry and Fry Farms from the lawsuit. Appellants further assert that, although Neil, Larry, and Fry Farms were not specifically named in the policy, there is a genuine issue of material fact as to whether they were foreseeable beneficiaries. In support of this argument, appellants claim that Walters was aware of Neil's and Larry's financial interest in the farm by way of conversations agent Harold Houdeshell had with Neil and Larry. Appellants also assert that Neil and Larry had a financial interest in the farm and therefore an interest in the insurance policy.

In reviewing a summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R.56(C).

"[A]n insurance policy is a contract and * * * the relationship between the insured and the insurer is purely contractual in nature." *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999) 85 Ohio St.3d 660, 663, 710 N.E.2d 1116, 1119. Consequently, if a person is a party to the contract for insurance or satisfies the definition of the term "insured" as set out in the policy, he or she would have standing to sue the insurer. The contract herein clearly lists only Modestus Fry as the "named insured." Further, the contract defines "insured" as "you, your spouse, and if you are an individual, the following members of your household: 1. Your relatives; 2. Any other person under the age of 21 who is in the care of any person specified above."

Nowhere in the record is there evidence that Neil and Larry Fry are members of their father's household. Accordingly, we find that Neil Fry, Larry Fry, and Fry Farms lacked standing to challenge the insurance contract in this case and the trial court did not err in dismissing them from the suit and granting summary judgment on this issue. Appellants' first assignment of error is not well taken.

In their second assignment of error, appellants assert that Walters breached its duty to exercise reasonable care by failing to advise them of the existence of the coinsurance clause and failing to recommend that they increase their coverage to offset the coinsurance. Appellants claim that the agency failed to advise them that the $85,000 stated limits on the declarations page of their policy was inconsistent with the actual limits, due to the coinsurance clause. Appellants assert that as a result of the agency's failure they were not adequately insured and did not receive the coverage they expected after the fire. Appellants further assert that they could not inquire about the coinsurance clause because they did not understand the policy language and were entirely unaware that it affected their coverage. Appellants assert that Houdeshell knew of their lack of understanding of the policy language and knew that they relied on him for advice on those matters but, nevertheless, negligently failed to act on their behalf as was his duty as an agent.

An insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance that its customer requests. See *First Catholic Slovak Union v. Buckeye Union Ins.* (1986), 27 Ohio App.3d 169, 170, 27 O.B.R. 202, 203–204, 499 N.E.2d 1303, 1305; *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 66, 7 O.B.R. 76, 78–79, 454 N.E.2d 158, 162–163. When the agency knows that the customer is relying upon its expertise, the agency may have a further duty to exercise reasonable care in advising the customer. *Stuart, supra.* The customer, however, has a corresponding duty to examine the coverage provided and is charged with knowledge of the contents of his or her own insurance policies. *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 453, 635 N.E.2d 1326, 1332–1333; *Nickschinski v. Sentry Ins. Co.* (1993), 88 Ohio App.3d 185, 195, 623 N.E.2d 660, 666–667. In *First Catholic Slovak Union, supra,* the court reviewed the trial court's finding that the agency had not negligently failed to provide proper coverage. The appeals court noted that for several years appellant had held policies with the same terms as those that were in effect when the loss occurred. The appeals court reasoned that appellant could not argue that the policies did not comply with its requests when it had failed to complain about the policies at any time during the previous years.

In this case, appellee Walters attached to its motion for summary judgment copies of declarations pages for three policy periods dating as far back as 1988, all of which indicate the existence of the coinsurance clause in the Fry

policy. Further, although Modestus Fry did not recall having read those documents, he did not deny having received them. The trial court had before it evidence that Modestus Fry had repeated policies with the coinsurance clause in them. There is no evidence that Modestus had inquired specifically about the meaning of the clause at any time during the numerous years the clause was in his policy. Based upon the law as stated above, we find that, absent specific inquiry by the insured, Walters had no duty to explain the coinsurance clause. Upon consideration of the foregoing law and the evidence before the trial court, we find that there is no genuine issue of fact as to whether appellee Walters was negligent and that the trial court did not err by granting summary judgment for appellees on this issue. Accordingly, appellants' second assignment is not well taken.

In their third assignment of error, appellants assert that genuine issues of fact exist as to whether Grange acted in bad faith by delaying payment of undisputed insurance proceeds for more than two years and as to whether Walters breached its duty to act in good faith.

As to Grange, appellants assert that, although the insurance company admitted owing $27,215.25 on the claim, it failed to render payment until January 2000, two years after the loss. Appellants argue that Grange's refusal to render payment to them unless they agreed that the undisputed amount was a "full and final settlement" of the claim establishes the existence of a genuine issue as to bad faith. Grange responds that the company did not render payment to appellants immediately because they refused to sign the sworn statement in proof of loss that their policy required be done within sixty days of the loss. Grange asserts that appellants did not submit the sworn statement in proof of loss until January 7, 1999, one year after the fire, and that the company had already begun to process the claim when appellants filed suit four days later. Grange states that it issued a check for $27,215.25 on January 12, 2000, two weeks after learning that appellants were willing to accept that amount.

■ "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. The refusal to pay may not be arbitrary or capricious. *Hoskins v. Aetna* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

■ In the case before us, Grange did not refuse to pay on appellants' claim, as the insurer did in *Zoppo, supra.* Grange set forth in detail on the "statement of loss" form how it arrived at the amount it believed it owed appellants based on the terms of the policy. The amount Grange offered appellants was in accor-

dance with the conditions of the coinsurance clause. While it is not clear from the record exactly when the Grange adjuster prepared the statement of loss and first offered appellants the sum of $27,215.25, the record does indicate that appellants did not submit the required "sworn statement in proof of loss" until January 7, 1999. Pursuant to the policy, appellants were required to submit the sworn statement within sixty days of the loss, which would have been approximately March 8, 1998.

Based on the foregoing, this court finds that (1) Grange did not refuse to pay appellants on their claim, (2) the insurance company's actions were not arbitrary or capricious, and (3) there is no genuine issue of material fact as to bad faith on the part of appellee Grange Insurance Company.

As to Walters, appellants assert that Harold Houdeshell failed to perform his duties as an agent by not informing them of the existence of the coinsurance clause in their policy and by not reviewing their policy for adequate coverage. Appellants assert that they relied upon their agent to "inform them" and relied upon the $85,000 coverage limit stated on the declarations page of their policy.

As we stated above, an insured has a duty to examine the coverage provided him and is charged with knowledge of the contents of his own insurance policies. *Craggett, supra.* Appellants have presented no evidence that Walters violated its duty to act in good faith in advising them as to the purchase of insurance. There is no evidence in the record that any of the Fry family specifically asked Houdeshell or any other Walters agent to explain the coinsurance clause or any other part of their policy, or that they so inquired and were ignored. Based on the foregoing, this court finds that there is no genuine issue of fact as to bad faith on the part of Walters and the trial court did not err by granting summary judgment on this question.

Accordingly, appellants' third assignment of error is not well taken.

In support of their fourth assignment of error, appellants assert that genuine issues of material fact exist as to the language, location, and overall effect of the coinsurance clause in their policy. Appellants first assert that the coinsurance clause as printed in the policy is not set forth in a clear and conspicuous manner. Appellants argue that they were misled as to the limits of their coverage because the terms "coinsurance," "eighty percent," and "decreased coverage" do not appear adjacent to the indicated coverage limit of $85,000 on the declarations page of their policy. They assert that the policy is deceptive as written because the coverage limits as stated on the declarations page were not accurate. Appellants further assert that the coinsurance clause is written in complex terminology that a layperson cannot understand.

As to the manner in which the coinsurance clause is set forth in the policy, we find that it is clear and conspicuous. In fact, the coinsurance provision is set forth in two places in the policy. The provision appears under the heading "SPECIAL CONDITIONS" on page twelve and begins with the words "COIN-SURANCE CLAUSE" in uppercase bold-face letters. The language explaining the clause is in type of the same size as the rest of the general language in the policy. The provision is referenced again on form "FO–300B," the "SCHEDULE OF FARM PERSONAL PROPERTY," under the heading "80% COINSUR-ANCE CLAUSE" which is set forth in bold-face, uppercase type.

■■■ Appellants further argue that the coinsurance clause improperly negates the amount of coverage they expected to have available to them in the event of a loss. We disagree. Coinsurance clauses are generally held enforceable in the absence of statutory prohibitions against them. *Perkins Steel Co. v. INA Ins. Co.* (May 5, 1983), Cuyahoga App. No. 45510, unreported, 1983 WL 2957. There is no such statutory prohibition in Ohio, where coinsurance clauses are commonly included in commercial insurance policies. *Id.* Despite the fact that the coinsurance clause was not specifically referenced on the declarations pages, we cannot find that appellants were misled or deceived when the coinsurance clause was set forth two times within the policy. Further, the first declarations page states, "This quote is subject to the following forms," and one of the forms listed is FO–300B, which clearly sets forth the coinsurance requirement.

■■■ Finally, appellant claims that the coinsurance clause is written in language that is too complex for a layperson to understand. The clause states:

"In consideration of the rate and/or form under which this policy is written, it is expressly stipulated and made a condition of this contract that the Insured shall at all times maintain contributing insurance on each item of property covered by this form to the extent of at least eighty percent (80%) of the actual cash value at the time of the loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, her or their proportion of any loss."

Courts in Ohio have found similarly worded clauses valid and legally enforceable. See *Perkins, supra; R & R Realty Co. v. Neff* (Aug. 10, 1983), Butler App. No. 82–05–0055, unreported, 1983 WL 4439. In the case before us, appellants have presented no persuasive argument that the language in the clause is ambiguous, misleading, or unconscionable. While the language quoted above is not written in layman's terms, the concept behind coinsurance is understandable when explained by someone who is informed on the subject. Based on the evidence before the trial court, it is clear that, while the coinsurance clause had been a part of Modestus Fry's policy for a number of years, Modestus Fry never

asked anyone at the agency to explain the clause and how it might affect him in the event of a loss.

Upon consideration of the foregoing, we find that there was no genuine issue of material fact as to the language, location, and overall effect of the coinsurance clause in this policy and that the trial court did not err by granting summary judgment to appellees on this issue. Accordingly, appellants' fourth assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants.

*Judgment affirmed.*

MELVIN L. RESNICK and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.