[Cite as *E. Liverpool v. Owners Ins. Co.*, 2021-Ohio-1474.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

### CITY OF EAST LIVERPOOL,

Plaintiff-Appellant,

v.

OWNERS INSURANCE COMPANY et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CO 0009**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2018-CV-81

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Charles L. Payne*, Law Director, 617 St. Clair Ave, P.O. Box 114, East Liverpool, Ohio 43920 and *Atty Thomas W. Connors,* Warner Mendenhall, 190 N. Union St. Akron, Ohio 44304 for Plaintiff-Appellant and

*Atty. Craig G. Pelini, Atty. Nicole Richard,* Pelini, Campbell & Williams LLC, Bretton Commons - Suite 400, 8040 Cleveland Avenue N.W., North Canton, Ohio 44720 and

*Atty. Joseph F. Nicholas, Jr.*, *Atty*. Frank H. Scialdone, *Atty. George V. Pilat, Atty. Michael*
*P. Byrne, Mazanec, Raskin & Ryder Co., L.P.A.,* 100 Franklin's Row, 34305 Solon Road,
Cleveland, Ohio 44139 for Defendants-Appellees.

Dated April 21, 2021

———————————

**Robb, J.**

{¶1}    Plaintiff-Appellant City of East Liverpool (the City) appeals the decision of
the Columbiana County Common Pleas Court granting summary judgment for
Defendants-Appellees Owners Ins. Co., Auto-Owners Ins. Co., Auto-Owners Ins. Group
(the three Owners Insurance Companies collectively referred to as Owners), John
Gauron, Jack L. Mills Agency, Inc., and Mega Ins. Agency, Inc. (all Appellees collectively
referred to as Appellees).  Multiple assignments of error are raised in this appeal.  The
first assignment of error is whether the term "intake well house" is plain and unambiguous.
If it is not, then does the evidence indicate it is reasonably susceptible to more than one
interpretation?  Reasonably susceptible to more than one interpretation would create a
genuine issue of material fact and thereby preclude the granting of summary judgment
against the City.  In the second assignment of error, the City asserts the trial court erred
in granting summary judgment in Owners' favor on the bad faith denial of coverage claim
and failure to investigate claim.  The third assignment of error raises issue with the trial
court's decision denying the City's Civ.R. 56(F) motion for a continuance of the summary
judgment ruling so that it could conduct more discovery.  The final assignment of error
raises arguments concerning the trial court's decision to grant summary judgment for
Appellees' on the reformation, equitable estoppel, and negligence claims.  For the
reasons discussed below, the trial court's ruling is affirmed.

<u>Statement of the Facts</u>

{¶2}    Many of the facts are undisputed in this case.  In 1986, the City requested
bids for insurance for Water Department buildings and equipment.  Appellee Auto Owners
submitted its bid in 1986 through agent Appellees Gauron and Mega Ins. Group.  The bid
request listed the "Intake Well House" located at 2220 Michigan Avenue, East Liverpool,
Ohio.  The bid was accepted by the City in 1986.

{¶3}    Appellee Owners asked the City to provide estimated values of the buildings and equipment.  The City hired Stilson & Associates, Inc. to provide the estimated values and they issued a report in 1989.

{¶4}    The report defines and assigns a value for the "Intake Structure."  It defines the structure as the point where the river water enters the system.  The structure is located in the Ohio River and is constructed out of reinforced concrete.  It contains several valves and piping from the river to the Well House, as well as minor electrical lighting for warning lights.  The replacement value of the Intake Structure is listed in the Stilson & Associates Report as $750,000.

{¶5}    The report also separately defines the "Well House."  It "receives water from the intake structure and acts as a suction well for the pumps in the Pump Station."  The Well House is 14 feet in diameter and is constructed of brick and contains ventilation, service electricity, and a one-ton crane.  The replacement value of the Well House is listed at $115,800.

{¶6}    In 1990, a renewal policy was issued.  The declarations pages of the policy did not list the Intake Structure and Well House as separate structures.  The renewal policy effective March 21, 2015 likewise does not list the Intake Structure and Well House separately.  Instead, the 2015 policy, for example, listed "Intake Well House" as being located at 2198 Michigan Avenue and the limit of insurance as $142,800.

{¶7}    On February 19, 2016, the water vessel Mary Artie Brannon owned by Defendant Crounse Corporation collided with the Intake Structure in the Ohio River.  Following the collision, the City submitted a claim to Owners.  That claim was denied on the basis that the Intake Structure was not covered by the terms of the policy; the assertion was the term "Intake Well House" only covered the Well House, not the Intake Structure.

Statement of the Case

{¶8}    Following the denial of the claim, the City filed suit against Appellees and Defendant Crounse Corp.  2/15/18 Complaint; 3/28/19 Amended Complaint.  The City asserted causes of action sounding in breach of contract, reformation of contract, equitable estoppel, misrepresentation, bad faith denial of a claim, failure to obtain the requested coverage, and negligence with a request for punitive damages.  The

Case No. 20 CO 0009

negligence claim was solely against Defendant Crounse Corp. The claim against John Gauron who was working for or doing business as Jack L. Mills Agency, Inc. and Mega Ins. Agency, Inc. was that Gauron failed to obtain the insurance the City requested.

**{¶9}** All defendants filed answers. Crounse admitted that its vessel, the Mary Artie Brannon, collided with the Intake Structure located at Mile Marker 40.2, but denied the nature and extent of the damage the City claimed was caused by the collision. 3/15/18 Answer of Crounse; 5/10/19 Crounse Answer of First Amended Complaint. Owners Insurance Company answered and filed a cross claim against Crounse. 3/22/18 Owners Insurance Company Answer and Cross Claim; 5/23/19 Answer of Owners Insurance Company to First Amended Complaint. Appellees Mega Ins. Agency, Gauron, and Jack L. Mills Agency answered asserting the building insured was the Intake Well House located at 2220 Michigan Avenue, not the Intake Structure located in the Ohio River. 4/2/18 Answer of Defendant Mega Ins. Agency; 4/20/18 Gauron and Jack L. Mills Agency Answer; 5/20/19 Answer of Gauron and Mega Ins. Agency to First Amended Complaint; 5/21/19 Answer of Gauron and Jack L. Mills Agency to First Amended Complaint.

**{¶10}** Defendant Crounse Corp. answered the cross claim. 3/29/18 Answer of Crounse Corp. to Cross Claim.

**{¶11}** Following discovery, Owners filed a Motion for Summary Judgment asserting the language of the policy is clear that the Intake Structure was not listed in the policy. The policy instead listed the "Intake Well House" located at 2220 Michigan Avenue with a coverage limit of $142,800. (The 2015 policy actually lists the location as 2198 Michigan Ave.). Similarly, Appellees Gauron, Jack L. Mills Agency and Mega Ins. Agency filed a motion for summary judgment asserting the Intake Well House remained on the policy as a single item for over 20 years at a value ranging from approximately $120,000 to $140,000. 5/31/19 Motion for Summary Judgment. However, when the Stilson Report was completed in 1989 the replacement value listed on that report for the Intake Structure was $750,000. Owners asserted the Stilson Report was not a request for coverage and the City failed to read the policy to ensure that there was coverage for the Intake Structure.

**{¶12}** The City filed motions in opposition to the motions for summary judgment asserting there was a genuine issue of material fact as to what the term "Intake Well

House" means. 8/5/19 Plaintiff's Brief in Opposition to Motion for Summary Judgment. Appellees filed a reply in support of summary judgment. 8/19/19 Reply.

{¶13} Defendant Crounse Corp also filed a motion for partial summary judgment. 8/7/19 Crounse Corp Motion for Partial Summary Judgment.

{¶14} The trial court granted summary judgment for Appellees on the claims the City asserted against them. 11/5/19 J.E. The judgment entry did not address the claims the City asserted against Crounse. Thus, the decision was not a final appealable order.

{¶15} Following the summary judgment ruling, the City and Crounse reached a settlement. The trial court then issued a judgment entry indicating the November 5, 2019 grant of summary judgment for Appellees is a final appealable order. 2/20/20 J.E.

{¶16} On April 29, 2020 the City and Crounse entered an agreed entry of dismissal stating, "The within action having been fully compromised and settled between Plaintiff City of East Liverpool and Defendant Crounse Corporation, Plaintiff's Amended Complaint and all pending Motions may be and are hereby dismissed, with prejudice each party to bear its own costs." 4/29/20 Agreed Entry of Dismissal.

{¶17} The notice of Appeal was filed prior to the Entry of Dismissal. 3/12/20 Notice of Appeal. Appellees filed a Motion to Dismiss. 3/20/20 Motion to Dismiss. On May 4, 2020, days after the agreed entry of dismissal was filed with the trial court, we granted the motion to dismiss indicating the order granting summary judgment would not become final until the entry of dismissal was filed and other issues such as allocation of court costs were resolved. 5/4/20 J.E. (acknowledging the parties were granted until May 29, 2020 to file an agreed entry of dismissal or judgment).

{¶18} On May 13, 2020 the City filed a second notice of appeal attaching the April 29, 2020 Entry of Dismissal. 5/13/20 Notice of Appeal. A new appeal number was assigned.

Standard of Review for the First, Second, and Fourth Assignments of Error

{¶19} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can

only produce a finding that is contrary to the non-moving party.  Civ.R. 56(C). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶20}** With that standard in mind, we review the first, second, and fourth assignments of error.

<u>First Assignment of Error</u>

"The trial court erred by granting summary judgment dismissing the City's breach of contract claims against Owners."

**{¶21}**  This assignment of error addresses the breach of contract claims asserted by the City against Owners and focuses on the phrase "Intake Well House" found in the declarations pages of the insurance contract.  The City contends there is a genuine issue of material fact as to the meaning of "Intake Well House."  The City argues the phrase was meant to include the Intake Structure, while Appellees contend it only covers the Well House.  Thus, the City asserts the phrase "Intake Well House" is ambiguous since it is reasonably susceptible of two meanings and/or has a special meaning.  Thus, according to it, extrinsic evidence can be considered to determine the meaning of the phrase.  The City contends that while the insurance contract at issue is the 2015 renewal policy, the prior policies dating back to the request for the Stilson Report should be considered to determine the special meaning the City understood the phrase to mean.  The City argues the trial court misapplied the test for determining the existence of a special meaning of "Intake Well House."  It asserts the trial court did not determine whether there was evidence that reasonable minds could find the existence of a special meaning.  Instead, it weighed the evidence regarding the meaning and invaded the province of the jury.

**{¶22}** The City argues the Stilson Report was commissioned to provide an evaluation of structures for insurance purposes and this report lists the Intake Structure as well as the Well House.  This, according to it, is evidence that the Intake Structure was intended to be insured.  Thus, the Intake Well House phrase in the declarations page included both the Well House and the Intake Structure.  The City points to the testimony of Bob Disch, the City's Public Utility Director at the time of the insurance contracts, that the Intake Well House includes both the Intake Structure and the Well House.  The City

<u>Case No. 20 CO 0009</u>

argues it was the trier of fact's province to weigh the evidence to determine the intent of the parties regarding the meaning of the phrase Intake Well House. It asserts the trial court acted improperly when it would not consider the corrections Disch made to his deposition in the errata sheets.

{¶23} Owners Insurance counters asserting the language of the policy is plain; the policy provides coverage for damage to the Intake Well House located at 2220 Michigan Avenue. There was never a request to cover the Intake Structure. It further contends the Intake Structure was specifically left off of the policy per the instruction of Bob Disch. The intent to only cover the Well House is also evidenced by the appreciably lower value listed in the policy that corresponds with the value of the Well House alone. The policy provided for coverage in the amount of roughly $140,000. The Intake Structure was valued at $750,000 in the 1989 Stilson Report. They also assert that the deposition testimony from Bob Disch also indicates that the Intake Structure and the Well House were two separate structures. Owners further argues that the City is incorrect that the trial court did not consider the statements Disch made to the errata sheets of his deposition. The trial court did consider them, but found them insufficient to create a genuine issue of material fact because the corrections directly contradicted other statements in the deposition.

{¶24} To succeed on a breach of contract claim, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. Franklin No. 09AP-788, 2010-Ohio-1649, ¶ 13. The interpretation of a written contract is an issue of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). The purpose of contract construction is to realize and give effect to the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus.

{¶25} "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). When "'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.'" *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, 857 N.E.2d 583, ¶ 12, quoting *Shifrin*. "A court will resort to extrinsic evidence in its effort

to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Medical Life Ins. Co.,* 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987)*.*

**{¶26}** When extrinsic evidence is used to resolve an ambiguity or understand a special meaning, the court must first examine parol evidence to determine the parties' intent. *In re Estate of Taris,* 10th Dist. Franklin No. 04AP-1264, 2005-Ohio-1516, citing *Cline v. Rose*, 96 Ohio App.3d 611, 615, 645 N.E.2d 806 (1994). The extrinsic evidence may include: (1) the circumstances surrounding the parties at the time the contract was made; (2) the objectives the parties intended to accomplish by entering into the contract; and (3) any acts by the parties that demonstrate the construction they gave to their agreement. *Blosser v. Carter*, 67 Ohio App.3d 215, 219, 586 N.E.2d 253 (4th Dist.1990). Ordinarily, courts should not grant summary judgment when an ambiguity exists, however if the extrinsic evidence stands undisputed, then the court may take this step. *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2020-Ohio-1471, 153 N.E.3d 866, ¶ 18 (1st Dist.), citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13 ("It is generally the role of the finder of fact to resolve ambiguity.") and *Lewis v. Mathes*, 161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318, ¶ 25 (4th Dist.) ("Ordinarily, summary judgment is inappropriate when contractual language is ambiguous, because a question of fact remains. But if the extrinsic evidence demonstrates that no genuine issue of material fact exists, we conclude that summary judgment may still be appropriate.").

**{¶27}** When parol evidence cannot resolve an ambiguity or special meaning and show the intent of the parties, a court must apply the secondary rule of contract construction whereby the ambiguous language/special meaning is strictly construed against the drafter. *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996)*; Reida v. Thermal Seal, Inc.,* 10th Dist. Franklin No. 02AP-308, 2002-Ohio-6968.

**{¶28}** Under the Building and Personal Property Coverage Form of the Insurance policy, it states:

A. Coverage

We will pay for direct physical loss of damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in Section A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. Building. Meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Building glass, meaning glass that is part of the building or structure;

(5) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure; and

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of

Case No. 20 CO 0009

the described premises, used for making additions, alterations or repairs to the building or structure.

2015 Insurance Policy.

**{¶29}** Location 003 in the Declarations Sections is the only declaration being argued that could cover the Intake Structure. This declaration indicates there are no additional forms for this location. The address listed for Location 003 is "BLDG 001 3R 2198 Michigan Avenue, East Liverpool, OH 43920." This declaration labels this location as "Intake Well House" and limits the insurance to $142,800.

**{¶30}** There is no plain and ordinary definition for "Intake Well House"; dictionaries do define "intake" and "well house," but there is no listed definition for "Intake Well House." Well House is defined as a "covered structure (as a house or room) built around the top of a well." https://www.merriam-webster.com/dictionary/well%20house. Intake is defined "an opening through which fluid enters an enclosure." https://www.merriam-webster.com/dictionary/intake.

**{¶31}** In looking at just the policy declarations and those definitions, the plain and ordinary meaning of "Intake Well House" is the well house that connects to the intake. The word "intake" modifies and describes the well house for which the insurance policy provides coverage. This definition corresponds to the address listed for the well house that is connected to the Intake Structure. Thus, the label "Intake Well House" describes that property. Furthermore, the address listed is not the mile marker in the Ohio River where the Intake Structure is located. Had that address been listed then possibly the label "Intake Well House" would have included the Intake Structure. Moreover, the City was the first party to use the term "Intake Well House" and specify that it was located at 2220 Michigan Avenue. It did so in 1986 when it published its Notice for Bids and Request for Bid. Defendant's Exhibit A and B to Disch Depo. The City cannot now claim that its own term, first used by it, is ambiguous. Therefore, this court concludes the language is not ambiguous. It is plain that what is located at that Michigan Avenue address, the well house that connects to the intake, is all that is covered.

**{¶32}** Even if this court were to conclude the term is ambiguous, the use of parol evidence would still limit the coverage to the one structure. The extrinsic evidence would

include, but not be limited to, the Stilson Report and Request for Bid. It is undisputed that the Stilson Report was done for purposes of insurance. It was prepared in response to new construction and renovations to existing structures. Disch Depo. Exhibit C. The Stilson Report stated the scope of the report was to provide the City with a summary of information and estimated replacement costs for the major structures for the purpose of submitting to the insurance company. Disch Depo. Exhibit C. "The insurance company will then be in a better position to evaluate and assess the rates to be charged for insurance protection to the City." Disch Depo. Exhibit C. However, as Disch acknowledged, that report lists the two (Intake Structure and Well House) separately. Disch Depo. 33. The replacement value of the Intake Structure listed in the Stilson Report is $750,000. The replacement value of the "Well House" in that same report is $115,800. Despite the Stilson Report's separate listings, the insurance contract does not list the Well House and Intake Structure separately. The contract also did not insure the "Intake Well House" for the combined amount of the Well House and Intake Structure. Instead, the contract covered the "Intake Well House" for an amount equivalent to the amount of the Well House alone; the insurance coverage was for approximately $150,000.

{¶33} Furthermore, the "Intake Well House" as described in the insurance contract was for a Michigan Avenue address, not for a structure in the Ohio River. As stated above, the Request for Bid that was sent out by the City in 1986 states, "The Location of Board of Public Utilities Buildings & Tanks to be bid are: * * * Intake Well House, 2220 Michigan Avenue, E.L.O." Likewise, this bid request does not list the structures separately and only lists a Michigan Avenue address for the location.

{¶34} Given the difference in the values between what was covered and what the structures were worth, it is glaring as to what the intent of the parties was by the use of the phrase intake well house. It was to only cover the Well House where the intake connects. Had the intent been to cover the Intake Structure, it would have been listed separately as it was in the Stilson Report or it would have been valued at a much higher amount.

{¶35} Admittedly, Disch did testify, "If you say to me 'intake pier,' that's the cement thing out in the middle of the river. If you say 'intake well house,' it kind of tells me you've combined these two features into one." Disch Depo. 32. The City focuses on Disch's

deposition testimony and the corrections he made to his testimony to indicate he subjectively understood the insurance contract to insure the Intake Structure and the Well House when it used the phrase "Intake Well House." The City asserts the corrected testimony creates genuine issue of material fact as to what "Intake Well House" means. We disagree and agree with the trial court's reasoning.

{¶36} The trial court explained that the statements on the errata sheet of Disch's deposition are little more than conclusory statements offered in support of his subjective belief and understanding. 11/5/19 J.E. The trial court acknowledged Civ.R. 30(E) permits a witness to make changes in form or substance to deposition testimony, but it is not a safe harbor. 11/5/19 J.E. It stated self-serving deposition testimony is insufficient to demonstrate a material issue of fact. The trial court determined:

> The subjective belief or understanding of Mr. Disch as set forth on the Eratta sheet to his deposition stands alone and is opposed by the objective evidence in the record. This includes the Notice For Bids, the Request for Bid, the express limitation contained therein, the insurance quote of Mr. Gauron, the Stilson report, the Statement of Values signed by Mr. Disch and his knowledge acquired during his long tenure with the City of East Liverpool and/or the Board of Public Utilities, and the unambiguous language of the Renewal Policy and Declarations, which Mr. Disch chose not to read for years. This evidence is not doubtful, uncertain, or ambiguous. All of it has been thoroughly analyzed, an appropriate activity at the stage of summary judgment.

> Mr. Disch apparently never expressed his "understanding" or raised any concern to anyone for some 20 years before the collision at issue. During this same time he continued to choose not to read the insurance policies that were renewed year after year. Had he read the insurance policies he would have or should have discovered that Auto-Owners did not insure the intake structure as of September 19, 2016. Even when construing the evidence most strongly in favor of the City of East Liverpool, the Eratta sheet to the deposition of Mr. Disch, supported only by his unexpressed

understanding cannot as a matter of law create a genuine issue of material fact that precludes summary judgment.

Based upon the entirety of the record before me, the only reasonable conclusion I can reach is that Auto-Owners insured the intake well house, but it did not insure the intake structure as of February 19, 2016. This conclusion is consistent with the intent of the Board of Public Utilities as expressed through the express limitation contained in the Notice for Bids and Request for Bid. This conclusion is consistent with the insurance policies issued starting in 1986 and renewed annually thereafter. It is consistent with the Renewal Policy that was in effect on September 19, 2016.

11/5/19 J.E.

{¶37} Our sister districts have indicated, "changes in Errata sheet—which completely change the deposition testimony—cannot be used to defeat a Motion for Summary Judgment." *Musil v. Gerken Materials, Inc.*, 6th Dist. Lucas No. L-19-1262, 2020-Ohio-3548, fn. 2, citing *Christian v. Wal-Mart Stores East, LP*, 5th Dist. Holmes No. 09CA014, 2010-Ohio-3040, ¶ 18, quoting *Hambleton Bros. Lumber Co. v. Balkin Ents., Inc.*, 397 F.3d 1217, 1225 (9th Cir.2005).

{¶38} Specifically in the deposition testimony Disch was asked if he ever requested the Intake Structure located in the river be insured. Disch Depo. 103. He responded he did not. Disch Depo. 103. Then on the errata sheet he changed his response to make it "clearer by adding" the city made the request prior to him being the director and that was the bid to insure all water department buildings including the intake well house, which he understood to mean the intake and the well house. 7/22/19 Filing. The five changes he made to his deposition were all similar to this one indicating that he understood the Intake Well House to mean the Intake Structure and the Well House.

{¶39} Considering that the major issue in this case is what is the meaning of Intake Well House, his changes in the errata sheet did change his answers substantially as to his subjective belief. Furthermore, during his tenure the policy was renewed and he admittedly did not read the policy except for the phrase "Intake Well House." When his

corrections are taken into consideration with his admission he did not read the insurance policy, the trial court correctly indicated it did not create a genuine issue of material fact.

{¶40} In conclusion, when viewed in the light most favorable to the City, reasonable minds conclude that the language used was clear and unambiguous. The Intake Structure was not covered by the policy. Our analysis could end at that point. However, even if we were to conclude the term was ambiguous, the only reasonable definition the extrinsic evidence suggests for "Intake Well House" is the Well House connected to the intake. It does not reasonably suggest coverage for the Intake Structure. The trial court's analysis, even though reviewed de novo, was on point and did not overstep by weighing the evidence. This assignment of error lacks merit.

Second Assignment of Error

"The trial court erred by granting summary judgment dismissing the City's bad faith claims against Owners."

{¶41} This assignment of error specifically addresses the bad faith claim. The City argues Owners had no lawful basis for denying the claim if the term "Intake Well House" has a special meaning that includes both the Intake Structure and the Well House or it is reasonably subject to such interpretation. It also contends that Owners had a duty to reasonably investigate the claim. Thus, they are raising a bad faith investigation and bad faith denial claim.

{¶42} As to the bad faith investigation, the City argues to survive summary judgment it was only required to show that the insurer had no reasonable justification for failing to determine whether its refusal had a lawful basis. It asserts the claim was filed on March 9, 2016 and denied 9 days later on March 18, 2016 with a statement that the City could provide further information supporting coverage.

{¶43} It claims Owners' files were searched for photographs or information regarding the intake, but none were located and Owners was unaware of the Stilson Report in Gauron's file. Further, Owners representative, John Biviano, a claims adjuster, would not answer questions at the deposition concerning whether the Stilson Report and Intake Structure photograph would have been pertinent to the investigation of the claim that the term "Intake Well House" referred to both the Intake Structure and the Well

House. The City asserts this evidence is sufficient to find that a reasonable mind would have concluded Owners did not adequately investigate.

**{¶44}** Owners counters, arguing the Stilson Report and findings confirm the position of no coverage. Thus, not reviewing it prior to denying coverage does not amount to bad faith.

**{¶45}** As to the denial claim, a bad faith denial claim hinges on the success of the breach of contract claim. As this court found no merit with the first assignment of error, this argument fails. However, this court will still address the issues.

**{¶46}** The City asserts the court must consider the evidence in the record showing a special meaning. Those are the 2015 renewal policy; the 1986 bid request; 1989 Stilson Report; and the statement by Tim Clark, the City representative, that the purpose of the Stilson Report was to identify all water department structures and have those insured.

**{¶47}** Owners counters, asserting the breach of contract claim fails and thus, this claim also fails. However, it also asserts a lack of good faith is more than just bad judgment or an incorrect decision. A result adverse to the insured does not mean the insurer acted in bad faith.

**{¶48}** The Ohio Supreme Court has determined that an insurer "fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. Reasonable justification does not exist where an insurer's refusal to pay a claim is arbitrary or capricious. *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188, 87 N.E.2d 347 (1949).

**{¶49}** The Sixth Appellate District has explained:

"[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. Where an insurer refuses to pay a claim without providing reasonable justification, the insurer fails to act in good faith. *McNair* at ¶ 124, citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the

syllabus. Failure to act in good faith gives rise to a claim against the insurer. *Hoskins* at paragraph one of the syllabus.

*Watkins v. Allstate Vehicle & Property Ins. Co.*, 6th Dist. Lucas No. L-19-1235, 2020-Ohio-3397, ¶ 53, *appeal not allowed,* 160 Ohio St.3d 1409, 2020-Ohio-4574, 153 N.E.3d 113, ¶ 53.

**{¶50}** The City's assertion of the facts is correct concerning the amount of time to investigate and the consideration of the Stilson report. However, (as stated above) given the facts either there is a dispute as to what "Intake Well House" means or it is plain that it does not mean both the Intake Structure and the Well House. The division of the structures used in the Stilson Report and the different valuations does clearly support Owner's position that intake and well house are two separate structures and "Intake Well House" is not a combination of the both. At most, the claim is fairly debatable. As the City points out, "'Where a claim is fairly debatable the insurer is entitled to refuse the claim * * *as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim.'" *Marshall v. Colonial Ins. Co.*, 7th Dist. Mahoning No. 15 MA 0169, 2016-Ohio-8155, ¶ 80. A failure to reasonably investigate before arriving at a legal or factual position can give rise to liability. *Marshall*, citing *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 554, 644 N.E.2d 397 (1994) (finding evidence from which the jury could conclude the insurer failed to conduct an adequate investigation on cause of fire and was not reasonably justified in denying the insured's claim).

**{¶51}** Had the Stilson report defined Intake Well House differently and the values set forth in the report for the total of both structures been equivalent to the value insured, the result of not looking at that report may have been different. However, as it stands given the facts, the Stilson Report creates a further indication the two are separate structures and, by using the phrase "Intake Well House," the word "intake" does not mean the Intake Structure but rather is a descriptor of the well house being insured. This further supports the position that even if there is a genuine issue as to what "Intake Well House" means and Owners incorrectly determined the definition, they are not necessarily liable for a bad faith claim. The actions and interpretation of Owners as described by the City do not amount to bad faith. Even an incorrect result does not mean bad faith.

Case No. 20 CO 0009

**{¶52}** This assignment of error is meritless.

<u>Preliminary Issue for Third and Fourth Assignments of Error</u>

**{¶53}** Mega and Gauron's brief only addressed the Third and Fourth Assignments of Error asserting that as Owners' agents these are the only assignments that relate to them. They address these assignments of error together. They start by asserting the City waived its claims against them because following its settlement with Crounse, the City voluntarily dismissed all its claims instead of just dismissing its claims against Crounse. Therefore, the interlocutory summary judgment order that would not become final until the claims against Crounse were resolved did not become final because the claims against everyone were dismissed. Effectually, they are asserting there is no order for this court to review because the interlocutory summary judgment ruling was dismissed along with all claims against all parties.

**{¶54}** The Agreed Entry of Dismissal states the following, "The within action having been fully compromised and settled between Plaintiff City of East Liverpool and Defendant Crounse Corporation, Plaintiff's Amended Complaint and all pending Motions may be and are hereby DISMISSED, with prejudice, each party to bear its own costs." 4/29/20 J.E. This dismissal was signed by the Judge and attorneys for the City and Crounse.

**{¶55}** The April 29, 2020 dismissal does not indicate which subsection of Civ.R. 41 the parties intended to dismiss in the matter. The dismissal in this case was titled "Agreed Entry of Dismissal," and not a notice of dismissal or stipulation of dismissal. Notices and stipulations are covered by Civ.R. 41(A)(1). Civ.R. 41(A)(2) is the By Order of the Court provision and states, "Except as provided in division (A)(1) of this rule, a claim shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper." Given that the order was signed by the court and the parties settling, this was a Civ.R. 41(A)(2) dismissal.

**{¶56}** Two months prior to the entry, the trial court was made aware of the settlement agreement between the City and Crounse. In February 2020, the trial court issued a decision indicating that due to the settlement agreement, the November 5, 2019 grant of summary judgment became a final appealable order. 2/20/20 J.E. It is clear the trial court was only dismissing the claims pending against Crounse, not any other claims.

<u>Case No. 20 CO 0009</u>

Thus, the April 29, 2020 dismissal did not dismiss claims against Appellees. Mega and Gauron's preliminary argument fails.

### Third Assignment of Error

"The trial court erred by denying the City's motions to compel deposition testimony and production of claims file from Owners and Mega."

**{¶57}** The City's argument focuses on the discovery of materials from Owners and Mega. It asserts Owners refused to provide a witness on the history of the relationship between Owners and the City. Owners did produce John Biviano, a claims adjuster, to testify about the investigation and the denial of the claim. The City contends this representative was not prepared or refused to answer deposition questions. Mega, Owners agent, provided its president Tom Minor as its representative. He also refused to answer questions. The City then moved the trial court to compel discovery of Owners' claim file and the testimony it sought from both Owners and Mega. That request was part of Civ.R. 56(F) motion to continue the decision on the summary judgment motions to allow the further requested discovery.

**{¶58}** The trial court denied the motion when issuing its summary judgment ruling. 11/5/19 J.E. It indicated the discovery in the case was already comprehensive, Fed.Civ.R. 30(b)(6) was not applicable, and additional discovery would not change the facts:

> Moreover, additional discovery will not change many of the facts already recited herein, including that the intake structure is in the Ohio River and has never been located on Michigan Avenue, even according to the City of East Liverpool and/or the Board of Public Utilities. Additional discovery will not change the fact that Mr. Disch did not read the insurance policies that were issued. Additional discovery will not change the many conclusions springing from the repeated failure to read the insurance policies and the resulting impact on the City of East Liverpool. Finally, additional discovery will not change the fact that, as a matter of law, the City of East Liverpool is presumed to be familiar with the contents of its insurance policy.

11/5/19 J.E.

Case No. 20 CO 0009

**{¶59}** The City focuses on the denial of allowing additional discovery, while Appellees focus on the denial of the continuance. Civ.R. 56(F) states:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

Civ.R. 56(F).

**{¶60}** We have previously explained:

> [A] review of the trial court's decision regarding the motion to stay judgment on Appellants' motion for summary judgment (construed as a Civ.R. 56(F) motion) is for abuse of discretion. *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31. An abuse of discretion reflects more than an error of judgment, but that the trial court acted unreasonably, arbitrarily or unconscionably in making its determination. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Taylor v. Burkhart*, 7th Dist. Monroe No. 19 MO 0013, 2020-Ohio-3632, ¶ 19.

**{¶61}** As Appellees point out, the questions the City claims it was entitled to answers and the questions deponents did not answer were questions asking for legal conclusions. They were: 1. "Whether Owners had a lawful basis for its denial of the claim?" 2. "Whether it was reasonable to investigate what 'intake well house' mean?" 3. "Whether the City's belief that 'intake well house refers to the intake and the well house is information pertinent to Owners investigation?" 4. "Whether the City's understanding that 'intake well house' refers to the intake and the well house, is reasonable under the circumstances?" 5. "Whether there were ambiguities in the policy?"

**{¶62}** Appellees are right. The majority, if not all, of these questions ask for legal conclusions. For instance, whether the term "Intake Well House" is ambiguous is a

question for a court to decide. Also, it is noted there were approximately 20 depositions filed in this case. Thus, there was extensive discovery. As such, the trial court is correct that allowing further discovery would not have changed the result.

**{¶63}** Also, as referenced above, Disch testified he did not read the policy. His deposition testimony indicated the only portion he read was the portion dealing with the Intake Well House. Disch Depo. 32. Considering this statement, this means he did not look at the remainder of the policy. Had the policy listed the Intake Structure separately he would not have seen it. Had it listed the Well House separately he also would not have seen it. Therefore, the City's conclusion that by reading only "Intake Well House" and its description indicated he read enough to draw the conclusion the Intake Structure and the Well House were both covered is an overbroad conclusion. An insured has a duty to examine the coverage provided and is charged with knowledge of the contents of his or her own insurance policies. *Fry v. Walters & Peck Agency, Inc.,* 141 Ohio App.3d 303, 310, 750 N.E.2d 1194 (6th Dist.2001); *Jacubenta v. Cadillac Ranch*, 8th Dist. Cuyahoga No. 98750, 2012-Ohio-586, ¶ 15; *Craggett v. Adell Ins. Agency,* 92 Ohio App.3d 443, 453, 635 N.E.2d 1326 (8th Dist.1993); *Nickschinski v. Sentry Ins. Co.,* 88 Ohio App.3d 185, 195, 623 N.E.2d 660 (8th Dist.1993). Reading one portion to draw the conclusion the Intake Structure was covered is insufficient because more could have been in the policy. Thus, reading one portion of the policy is insufficient to conclude the policyholder met the duty to read the policy.

**{¶64}** For all the above stated reasons, the trial court did not abuse its discretion in denying the Civ.R. 56(F) motion. This assignment of error lacks merit.

Fourth Assignment of Error

"The trial court erred in granting summary judgment dismissing the City's reformation, estoppel, negligence and misrepresentation claims against Owners and Owners' agents."

**{¶65}** This assignment of error addresses the trial court's decision to grant summary judgment to Appellees on the reformation, equitable estoppel, negligence, and misrepresentation claims.

Case No. 20 CO 0009

A.  Reformation

**{¶66}** As to reformation, the City argues the trial court improperly held Disch's acknowledgment that he did not read the insurance contract in its entirety against him. He cites our *Gerace Flick v. Westfield Nat. Ins. Co.* decision to support his position.

**{¶67}** In *Gerace Flick*, we held that the failure to read the insurance contract did not, given the facts of that case, prohibit the insured from coverage:

> Admittedly, [the insured's] failure to ever read the Westfield Homepak policy, and thus determine on his own that the coverage may be inadequate, is remarkable. It is axiomatic that one receiving a written instrument in a business transaction is presumed to be familiar with its contents. *Slovak v. Adams,* supra at 845, 753 N.E.2d 910; and *Atlas Realty, Inc. v. Ladies Auxiliary to Broth. of R.R. Trainmen* (1960), 111 Ohio App. 396, 397, 171 N.E.2d 382; citing, 31 Corpus Juris Secundum, page 838, § 150.

> Nevertheless, [the insured's] failure to read the policy is typically the subject of a comparative negligence defense which is generally addressed at trial and not on a motion for summary judgment. See, *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 681, 693 N.E.2d 271 (the question as to whether plaintiffs' contributory negligence is the proximate cause of his injury is an issue of fact for the jury to decide pursuant to the comparative negligence provisions of R.C. § 2315); and *Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 39, 518 N.E.2d 1226 (contributory negligence is generally an issue of fact unless the evidence shows that plaintiff's negligence was so extreme as a matter of law that no reasonable person could conclude plaintiff was entitled to recover). Thus, Appellees themselves raise a factual issue that a jury ought to decide.

*Gerace Flick v. Westfield Nat. Ins. Co.*, 7th Dist. Columbiana No. 01 CO 45, 2002-Ohio-5222, ¶ 66-67.

**{¶68}** We held there was a genuine issue of material fact as to whether the insurance company was negligent in securing the insurance coverage sought.  *Id.* at ¶

95. We explained a jury could determine the failure to review the policy forecloses the ability to recover and thus, the issue is for trial. *Id.* at ¶ 97. Accordingly, the trial court erred when it granted summary judgment with respect to the request for equitable reformation of the insurance policy. *Id.* at ¶ 97.

**{¶69}** While we decline to overrule our prior decision, we recognize our sister districts do indicate a court should not reform an insurance policy where the party seeking reformation has failed to fulfill his duty to read the policy. *LG Mayfield LLC v. United States Liab. Ins. Group*, 2017-Ohio-1203, 88 N.E.3d 393, ¶ 63 (11th Dist.) (explaining, "Reformation is a remedy in equity, and '[e]quity aids the vigilant.' *Marconi v. Savage*, 8th Dist. Cuyahoga No. 99163, 2013-Ohio-3805, 2013 WL 4774506, ¶ 23 (discussing the equitable doctrine of laches and explaining that 'a person is not entitled to relief when there has been an "[u]nreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time'"), quoting *Russell v. Fourth Natl. Bank*, 102 Ohio St. 248, 265, 131 N.E. 726 (1921). *See also Jacubenta v. Ranch*, 8th Dist. Cuyahoga No. 98750, 2013-Ohio-586, ¶ 15 ('An insurance policyholder has a duty to read its insurance policy.'); *Hts. Driving School v. Motorists Ins. Co.*, 8th Dist. Cuyahoga No. 81727, 2003-Ohio-1737, ¶ 38 (charging a policyholder with knowledge about the contents of his insurance policy); *Allstate Ins. Co. v. Croom*, 8th Dist. Cuyahoga No. 95508, 2011-Ohio-1697, ¶ 11.

**{¶70}** The City is correct the trial court does cite the *Gerace Flick* decision. However, the City fails to acknowledge the decision was based on those unique facts. The facts here are different, which the trial court acknowledged when it made its reformation ruling. Disch indicated he did not read the insurance contract other than the phrase "Intake Well House." He claims to have taken that phrase to mean both the Intake Structure and the Well House. He also acknowledged he saw the Stilson Report. That report was prepared for insurance purposes and listed the Intake Structure and the Well House separately. What is even more telling is the value of the Intake Structure alone was $750,000, while the Well house was approximately $120,000. Yet, on the portion of the policy that Disch allegedly read it only indicated the value of the "Intake Well House" at approximately $140,000. Had he read the policy, these facts would have raised red flags as to whether there was coverage for what was allegedly to be insured. This is not akin to *Gerace Flick* where the facts indicated the insured was asking questions about

the insurance and explaining to the insurance company what was occurring in a manner that was clear he was trying to obtain the correct insurance for the house and its belongings that were in his daughter's name and also contained his personal belongings (that were destroyed in a house fire).

**{¶71}** Consequently, considering the facts at hand, the trial court did not err in granting summary judgment for Appellees on the reformation claim.

B.  Estoppel

**{¶72}** The trial court also granted summary judgment to Appellees on the City's equitable estoppel claim.  The reasoning was also Disch's failure to read the policy.  Alternatively, the trial court stated there was no showing of any misleading factual misrepresentation arising to the level of actual or constructive fraud.

**{¶73}** Once again, the City asserts this is a comparative negligence issue.  It claims Ohio law specifically holds an insurance company will be equitably estopped from denying coverage where its agent has mistakenly mislead an insured into believing he had coverage for a loss that the policy did not provide and the insured relied on this mistake.  It argues the coverage offered following the Stilson Report for the "Intake Well House" was sufficient evidence of misrepresentation.

**{¶74}** Owners counters arguing it never made a factual representation to the City regarding the Intake Structure and there is no evidence of any misleading factual misrepresentation.

**{¶75}** Under the doctrine of equitable estoppel, "'a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting the denial would result in injury or damage to the party who so relies.'"  *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 20, quoting 4 R. Lord, Williston on Contracts, Section 8:3, 28-31 (4th Ed.1992). "'The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.'"  *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 43, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990).  "'A prima facie case of equitable estoppel requires proof of (1) a factual representation that, (2) is misleading, (3) induces actual reliance that is reasonable and

in good faith, and (4) causes detriment to the relying party.'" *Garb-Ko, Inc. v. Benderson*, 10th Dist. Franklin No. 12AP-430, 2013-Ohio-1249, ¶ 17.

**{¶76}** As explained above, the Stilson Report was used for insurance purposes for providing valuations. However, there is no indication in the testimony it was a request for insurance of everything listed in it. Specifically, Keith Clark, the former Director of Public Utilities, could not point to a communication indicating it was a request for insurance of all structures listed in it. Clark Depo. 243-247, 250-253. Furthermore, there is no evidence Appellees stated or indicated the Intake Structure was covered. Accordingly, the trial court's grant of summary judgment on the equitable estoppel claim are upheld.

C. Negligence and Misrepresentation

**{¶77}** The trial court indicated the amended complaint alleged negligence and misrepresentation on the part of Mega and Gauron for failure to obtain the requested policy coverage. The trial court stated both claims were time barred by the four-year statute of limitations. The court explained the delayed damages rule and the discovery rule does not change the result. The court indicated, as to negligence, that the case at hand was distinguishable from the *Kunz* case where the insured initially pursued insurance to cover everything. Here, it held, the City did not initially purchase insurance to cover the Intake Structure. As to misrepresentation, the court also stated, in addition to being barred by the statute of limitations, Disch's failure to read the policy was an indication the City failed in its duty to know the contents of the policy. Furthermore, as with the above arguments it also noted there is no evidence anyone provided any false information to the City or the Board of Public Utilities prior to the damage occurring to the Intake Structure.

**{¶78}** The City claims the trial court misconstrued both its negligence and misrepresentation claims as requesting application of delayed damages. It contends it was seeking damages for negligence and misrepresentation in connection with the 2015 renewal policy. Thus, it was not setting forth a claim under the delayed damages rule and that rule would not be addressed.

**{¶79}** The City argues an action for negligent procurement of an insurance policy or negligent misrepresentation of the terms of the policy begins to run when the policy is

issued and the renewal of insurance is a separate and distinct contract. It contends the 2015 contract is a separate contract having a beginning date of March 21, 2015 and an ending date of March 21, 2016. The failure to procure the requested coverage in the renewal policy is a separate act of negligence and misrepresentation.

**{¶80}** Mega and Gauron argue the trial court correctly determined the statute of limitations barred the action and, alternatively, there was no evidence of misrepresentation or negligence. Specifically, there was no evidence false information was provided to the City stating the Intake Structure was covered under the policy. Owners similarly argues the actions are barred by the statute of limitations. It claims the statute of limitations should not be tolled simply because the policy is renewed year after year. Furthermore, it claims there was no misrepresentation or negligence; there was no statement or action indicating the Intake Structure was covered.

**{¶81}** To establish actionable negligence, one must show there was a duty, the duty was breached, and an injury resulted from the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

**{¶82}** The elements of negligent misrepresentation are:

"(1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837–838. A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 149, 684 N.E.2d 1261, 1269; *Zuber v. Ohio Dept. of Ins.* (1986), 34 Ohio App.3d 42, 45-46, 516 N.E.2d 244, 246-248." *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 103-04, 742 N.E.2d 1198 (10th Dist.2000).

*Jochum v. Howard Hanna Co.*, 11th Dist. Lake No. 2020-L-077, 2020-Ohio-6676, ¶ 39.

Case No. 20 CO 0009

**{¶83}** The Ohio Supreme Court in *LGR Realty, Inc.* recently addressed the four-year statute of limitations for professional-negligence claims governed by R.C. 2305.09(D). *LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241. The issue in that case was when the negligent-procurement and negligent-misrepresentation claims accrued, triggering the start of the statute of limitations. *Id.* at ¶ 12. The Ohio Supreme Court concluded the delayed damages rule does not apply to a negligent procurement or negligent misrepresentation claims where the terms of the policy when issued contains a provision specifically excluding the type of claim that the insured alleges it believed was covered by the policy. *Id.* at ¶ 31. "The cause of action in such a case accrues on the date the policy is issued." *Id.*

**{¶84}** In *LGR Realty, Inc.,* the Court indicated the general rule is the statute of limitations begins to run when the injurious act is committed. *Id.* at ¶ 26. The language used by the Court appears to indicate when negligent procurement and misrepresentation claims are alleged, the alleged damage occurs the moment the contract is entered and the insured becomes obligated to pay a premium for the insurance policy that provided less coverage than it believed it would receive. *Id.* at ¶ 29. The case law does not indicate if there is a distinction between a renewal or original issuance. This raises the question of whether the statute of limitations begins to run at every renewal or does it only begin to run at the first issuance? The Ohio Supreme Court has stated a renewal insurance contract can represent a new contract of insurance separate from the initial policy. *See Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 24 ("In *Benson,* we held that statutes pertaining to an insurance policy and its coverage that are enacted after the policy's issuance are incorporated into a renewal of the policy if the renewal represents a new contract of insurance separate from the initial policy.").

**{¶85}** Whereas here, the renewal policy has a stated start date and end date, the renewal may be a separate policy starting the statute of limitations for negligence and misrepresentation claims when the policy is renewed. Therefore, the statute of limitations would not bar this action.

**{¶86}** Conversely, here the issue is the coverage and the policy had not changed as to coverage of the "Intake Well House" for the past 20 years, other than to slightly change the amount covered, Hence, there is an indication that it is not a new contract.

Case No. 20 CO 0009

The testimony indicated coverage did change over time. Gauron said items were added. However, none of those items appear to have added anything to the "Intake Well House." That portion of the policy remained unchanged. This seems to indicate that the action is barred by the statute of limitations.

**{¶87}** Assuming without deciding that the claims are not barred by the statute of limitations, the claims cannot survive summary judgment for the reasons expressed under the estoppel analysis. There is no evidence in the record Appellees ever stated the Intake Structure was covered or the term "Intake Well House" meant to include coverage for both the Intake Structure and the Well House, or that the City specifically asked for coverage for the Intake Structure located in the Ohio River.

**{¶88}** The trial court's grant of summary judgment for Appellees on the reformation, equitable estoppel, negligence, and misrepresentation claims is supported by the record. This assignment of error lacks merit.

### Conclusion

**{¶89}** All assignments of error lack merit and the trial court's decision is affirmed in all respects. The language of the insurance contract is plain and unambiguous; the term "Intake Well House" does not mean Intake Structure and Well House, but rather means only the well house that is connected to the Intake Structure. Further, the trial court correctly determined there was not sufficient evidence to survive a summary judgment motion on the bad faith denial and failure to investigate claims. The trial court also did not abuse its discretion in denying the Civ.R. 56(F) motion to continue for further discovery. Lastly, the trial court's grant of summary judgment for Appellees on the reformation, equitable estoppel, negligence, and misrepresentation claims is supported by the record.

Donofrio, P J., concurs.

Waite,.J., concurs.

Case No. 20 CO 0009

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**